PER CURIAM.
 

 At issue in this workers’ compensation appeal is whether section 440.13(5)(a), Florida Statutes, permits a claimant, who previously obtained an independent medical examination on the issue of compensa-bility, to have a subsequent independent medical examination on the issue of maximum medical improvement if he disputes that determination.
 

 The order on review denies Appel-lani/Claimant Luis Gomar’s petition for benefits seeking orthopedic care and pain management. The petition for benefits was filed approximately two years after his authorized treating physicians deemed him at maximum medical improvement (“MMI”). In support of his petition for benefits, Mr. Gomar obtained an updated independent medical examination (“IME”) from the same physician who conducted his initial IME. The updated IME concluded that Mr. Gomar has not reached MMI. The Judge of Compensation Claims’ (“JCC”) disallowed evidence relating to the second IME, because section 440.13(5)(a) states a party may have only one IME per accident. We find the ruling in error, and reverse.
 
 [1]
 

 Facts
 

 On April 12, 2006, Mr. Gomar sustained a work-related injury which aggravated a non-work-related and preexisting condition. He filed an initial petition for benefits on November 17, 2006, seeking com-pensability of the work-related aggravation injury and temporary disability benefits; the Employer/Carrier (“E/C”) promptly denied this petition for benefits. Mr. Go-mar filed a second petition for benefits on December 19, 2006, requesting payment of medical bills and authorization of medical care, which the E/C also denied. Also on that date, Mr. Gomar underwent an IME with Dr. Simon, who diagnosed him with cervical radiculopathy and a cervical strain; concluded that the work injury was the major contributing cause of aggravation to a pre-existing neck condition; and recommended physical therapy and nerve blocks. Based on the IME, the E/C acknowledged compensability of the injury and authorized Dr. Weber as Mr. Gomar’s treating physician.
 

 Mr. Gomar saw Dr. Weber in early June 2007 complaining of neck pain and numbness in his hands. Dr. Weber initially diagnosed him with cervical radiculitis and, following a physical and neurological examination, prescribed physical therapy and medication. But on June 28, 2007, after
 
 *857
 
 reviewing an ordered cervical MRI and again physically examining Mr. Gomar, Dr. Weber opined that the work-related injury was no longer the major contributing cause of Mr. Gomar’s current condition, which included severe neck pain and intermittent pain in his arms; rather, the preexisting neck condition was the major contributing cause. Dr. Weber placed Mr. Gomar at MMI with a 0% impairment rating as to his work-related injury.
 

 After requesting and receiving a onetime change in his authorized treating physician, Mr. Gomar saw Dr. Flynn, an orthopedist, on August 23, 2007, still complaining of neck and arm pain. Dr. Flynn ordered an EMG/NCS (electromyogram and nerve conduction study), which was performed in early September 2007. On November 1, 2007, following another physical examination and review of the EMG/ NCS results, Dr. Flynn diagnosed Mr. Go-mar with neck and arm pain after work-related injury and temporary aggravation of preexisting degenerative cervical spon-dylosis. He prescribed no treatment, and placed Mr. Gomar at MMI as of that date with 0% impairment from the work injury. The E/C subsequently discontinued benefits.
 

 Mr. Gomar returned to Dr. Flynn on March 20, 2008, again complaining of neck pain, and also pain radiating into his upper back and thoracic area. Dr. Flynn ordered an MRI of the thoracic spine, which revealed some mild degenerative changes that occur over time and not due to acute injury. No spinal cord abnormalities were seen. He thus maintained Mr. Gomar’s date of MMI at November 1, 2007.
 

 On March 17, 2009, Mr. Gomar filed the petition for benefits at the center of this appeal. After this was denied by the E/C, he underwent an “updated” IME with Dr. Simon directed to whether he has in fact reached MMI. At the final hearing, the JCC excluded from evidence all testimony and records related to the 2009 IME because section 440.13(5)(a) allows parties to have only one IME per accident.
 
 [2]
 
 As a result, the JCC had before it only the records and testimony of Dr. Simon regarding the 2006 IME establishing Mr. Gomar’s initial need for treatment after his work-related injury, and the records and testimony of authorized treating physicians Drs. Weber and Flynn placing Mr. Gomar at MMI in 2007. The JCC denied the petition for benefits, finding no evidence that Mr. Gomar’s pain and need for treatment were attributable to the work-related injury.
 

 Analysis
 

 Section 440.13(5)(a), Florida Statutes (2005), provides, in pertinent part:
 

 In any dispute concerning overutilization, medical benefits, compensability, or disability under this chapter, the carrier or the employee may select an independent medical examiner.... The employer and employee shall be entitled to only one independent medical examination per accident and not one independent medical examination per medical specialty-
 

 We disagree with the JCC’s restrictive reading of this provision, as it essentially forever limits a party to one IME.
 

 In
 
 Cortina v. State, Department of HRS,
 
 901 So.2d 273, 274 (Fla. 1st DCA 2005), we stated that “the only condition required for a party to request an IME [under section 440.13(5)(a) ] is a
 
 dispute.”
 
 (Emphasis in original.) In other words, when
 
 “any
 
 dispute concerning overutilization, medical benefits, compensability, or
 
 *858
 
 disability” arises, a claimant or employer may request an IME. § 440.13(5)(a), Fla. Stat. (emphasis added).
 

 The claimant in
 
 Cortina
 
 had been receiving treatment from an authorized psychiatrist, but following the doctor’s determination that she had reached MMI, her claim for temporary partial disability benefits was denied.
 
 Cortina,
 
 901 So.2d at 275. We held that the claimant’s disagreement with the MMI determination and the e/c’s denial of benefits created a dispute, thus entitling her to an IME under section 440.13(5)(a).
 
 Id.
 

 Here, as in
 
 Cortina,
 
 the E/C denied Mr. Gomar’s petition for benefits based on the findings of the authorized treating physicians that he has reached MMI. Mr. Gomar disagrees with that determination in light of his apparently incessant pain since the date of his workplace injury. “[WJhen an employer authorizes evaluation and treatment of a claimant, but after receiving the diagnosis of the treating physician the claimant disagrees with it, a dispute is created and the claimant may request an IME.”
 
 Id.
 
 at 274.
 

 We recognize, of course, that the date of accident dictates which version of a substantive statute applies.
 
 See, e.g., Kaloustian v. Tampa Armature Works, Inc.,
 
 5 So.3d 753, 754 (Fla. 1st DCA 2009) (holding JCC reversibly erred in applying the post-October 1, 2003, version of section 440.34(3) to a claim with a pre-October 1, 2003, date of accident);
 
 Bell v. Univ. of Fla.,
 
 652 So.2d 460, 461 (Fla. 1st DCA 1995) (restating that substantive workers’ compensation rights are fixed at the time of injury). We also acknowledge that
 
 Cortina
 
 involved the 1996 version of section 440.13(5) which, as with the 2005 version, provided for an IME “[i]n any dispute concerning overutilization, medical benefits, compensability, or disability under this chapter ....”§ 440.13(5)(a), Fla. Stat. (1996).
 

 For purposes of the issue before us now, the crucial difference between the 1996 and 2005 versions of this section is that the latter limits a party to “only one independent medical examination per accident and not one independent medical examination per specialty.” § 440.13(5)(a), Fla. Stat. (2005). The Legislature did not, however, change the language regarding entitlement to an IME in any
 
 “dispute
 
 concerning overutilization, medical benefits, compens-ability, or disability.”
 
 Id.
 
 (emphasis added). Furthermore, in both versions of the statute, “independent medical
 
 examiner”
 
 is defined as “a physician selected by either an employee or a carrier to render
 
 one or more
 
 independent medical
 
 examinations
 
 in connection with a dispute arising under this chapter.” (Emphasis added.)
 

 When read in
 
 pari materia,
 
 we think that the only way to read these three provisions harmoniously is to interpret section 440.13(5)(a) as allowing for one independent medical
 
 examiner
 
 per accident, and not, as was formerly the case, one per specialty. We observe that in the clause “only one independent medical examination per accident and not one independent medical examination per specialty,” the exclusionary phrase “and not” is indicative of the legislature’s intent. Prior to the 2003 amendment, parties could use section 440.13(5)(a) to obtain IMEs for multiple specialties. The logical purpose of the amendment was intended to prevent utilization of multiple IMEs in various specialties, not to prevent a party from providing updated medical evidence with its designated examiner concerning a new issue. This is logical because, as demonstrated here, a workers’ compensation claim can extend over a period of years,
 
 *859
 
 during which time a claimant’s condition may change and issues such as maximum medical improvement date, work restrictions and impairment ratings may arise.
 

 To hold that a party is allowed by statute to obtain an examination by its chosen independent medical examiner only one time, despite the fact that these issues may, and often do, arise long after the initial examination, would lead to a
 
 reduc-tio ad absurdum.
 
 Thus, we hold that each party is entitled to an IME for each covered dispute during the life of a claim, so long as it is performed by the same examiner.
 
 [3]
 

 Here, Mr. Gomar’s challenge to the opinions of Drs. Weber and Flynn placing him at MMI raises a new dispute for which he is entitled to seek a new — or in this case “updated” — IME. In
 
 Wal-Mart Stores, Inc. v. Liggon,
 
 668 So.2d 259, 261-64 (Fla. 1st DCA 1996), we held that the employer’s request for a second IME was reasonable because more than a year had passed since the first IME, and a dispute arose as to the claimant’s work restrictions and entitlement to permanent total disability benefits. We acknowledge that the court in
 
 Liggon
 
 addressed the 1991 version of section 440.13. That version provided that the right to conduct an IME included, but was not limited to
 

 instances when the authorized treating physician has not provided current medical reports; determining whether over-utilization by a health care provider has occurred; whether a change in health care provider is necessary; or whether treatment is necessary or the employee appears not to be making appropriate progress in recuperation.
 

 § 440.13(2)(e), Fla. Stat. (1991). In other words, parties were entitled to an IME when issues (i.e., disputes) arose during the life of a claim which required a medical opinion based on the claimant’s independent medical examination.
 

 Here, because the JCC prohibited Mr. Gomar from putting into evidence the results of the new IME and the IME physician’s deposition testimony, we REVERSE the order denying his petition for benefits and REMAND for further proceedings consistent with this opinion.
 

 THOMAS, ROBERTS, and MARSTILLER, JJ., concur.
 

 [1]
 

 . Because we find this issue dispositive, we do not reach the second issue raised by Mr. Gomar.
 

 [2]
 

 . We review
 
 de novo
 
 the JCC's interpretation and application of the statute, as it is a question of law.
 
 See Lanham v. Dep't of Envtl. Prot.,
 
 868 So.2d 561, 562 (Fla. 1st DCA 2004).
 

 [3]
 

 . This limitation is subject to the exception found in section 440.13(5)(b), Florida Statutes (2005), which provides for an "alternate” independent medical examiner under certain enumerated circumstances. We are not called upon to interpret this provision and decline to do so here.